## DEVEREUX v. CHAMPION COTTON PRESS COMPANY.

1. In an action for damages for obstructing a public street, and for other acts injuriously affecting the plaintiff's property, the Circuit judge committed no error in refusing to charge ".that the measure of the damages in this case should be the loss of rent sustained by the plaintiff by reason of the abandonment of his premises by his tenant, caused by the wrongful acts of defendants," for it assumed the existence of facts then in issue before the jury.

2. Where the facts are in dispute they should be hypothetically stated in requests to charge upon propositions of law involved in their consideration.

3. And, moreover, the verdict for defendant was a finding that no injury had been done to the plaintiff's property, and it is now immaterial whether there was error in the judge's charge as to the measure of damages.

4. The rule governing the correction of errors of law requires two things

to be made clear by the party alleging error: 1, that some erroneous ruling has been made; 2, that he has been prejudiced thereby as to the merits of his case.

5. But the pleadings having raised the issue of nuisance and injury to the plaintiff's property, and the judge having instructed the jury that the true measure of the damages is the injury to the plaintiff's property, to which interest might be added, he did not entirely take away from the jury the consideration of loss of rent as an element in the injury, and therefore committed no error in refusing a charge which made the loss of rent the exclusive basis of a verdict of damages.

6. The mode of estimating damages in cases of tort is different from that in cases of contract. In the latter the consequences of a breach can be generally ascertained by calculation, but not so in the former.

———

Before KERSHAW, J., Charleston, July, 1881.

This was an action by John H. Devereux against the Champion Cotton Press Company, commenced January 10, 1879. The case was once before in this court on appeal, and will be found reported in 14 *S. C.* 396. The opinion of the court, together with the judge's charge, fully states the case.

The charge of the judge, omitting points having no bearing upon the case presented to this court, was as follows:

In cities where great works have been erected and carried on, which are the means of promoting the public welfare, persons are not to be encouraged to stand upon their extreme rights, and to bring actions in respect of every matter of annoyance, as, if that were done, business would be seriously obstructed and the general interests would suffer. The injury, therefore, in such cases must be real, tangible, and must be capable of estimation and of compensation. It must not be fanciful, trivial, or a matter of fastidious taste. All persons have a right to use the streets for the purpose of receiving and removing their goods, and no temporary obstruction of the streets will be improper or illegal if due diligence was used.

The jury cannot take into consideration anything which occurred since the 10th January, 1879, though that evidence might tend somewhat, when coupled with the evidence of how the business was carried on before, to lead the jury to believe

that that was the habitual mode of conducting the business. The damages must be confined to compensation for the impaired value of the property of the plaintiff, if you find for the plaintiff. In no case could the verdict go beyond the value of that property. If the defendants stored cotton in violation of the city ordinances, and the plaintiff suffered any damage to his property in consequence thereof, he is entitled to recover to the extent of such damage. The testimony of the clerk of the city council does establish that the city gave the authority to the defendants to establish a cotton press in the place where it was afterwards established, and would have the same effect as if they had given a formal license.

The storing of cotton within the limits of the city of Charleston south of Calhoun and west of East Bay streets is unlawful, and in itself constitutes a nuisance; and if any damage resulted, in violation of that law by these defendants, to the plaintiff's property, the plaintiff is entitled to recover to the extent of such damage. The evidence must satisfy you, however, that they did violate that law; that the ordinance which prohibits the storage of cotton within the limits mentioned was violated; and if you find for the plaintiff on that ground you must find that they did not only pursue the business of a Cotton Press Company, but stored cotton there as a business. You have heard the testimony. You will first determine whether they did store cotton; and, if they did, was it in a building such as was authorized by the ordinance.

The jury has simply to find whether the property of the plaintiff has been injured by the wrongful acts of the defendants; and, second, to what extent it has been injured.

The plaintiff requests the court to charge "that the measure of the damages in this case should be the loss of rent sustained by the plaintiff, by reason of the abandonment of his premises by his tenant, caused by the wrongful acts of the defendants, and the difference between the value of his, the plaintiff's, property before and the depreciated value of the property since the commission of the acts complained of."

I have charged you adversely to that proposition. I think the true measure of damages is the injury to the plaintiff's

property. I don't think we can go into the matter of what rents might have been received. If you find for the plaintiff the extent of the damage to his property, you may add to that a computation of the interest from the time of such injury up to the present time. The plaintiff is entitled to recover the impaired value, if any, of his property, and such interest as would be proper to compensate him if he is entitled to recover at all.

Messrs. *McCrady & Son,* for appellant.

His Honor erred in withdrawing from the jury the loss of rent as an element of damages, as the action was based upon such loss and there was no other testimony as to damages before the jury. The question of rent being withdrawn, there was nothing left for the jury to base a verdict upon, and the charge was therefore equivalent to a direction to find for the defendant. The weight of authority clearly shows that the loss of rent should be considered as an element of damages. *Abb. Tr. Evid.* 643, ¶ 9; 4 *Wait Act. and Def.* 777; 53 *N. Y.* 155; 67 *N. Y.* 270; 9 *Wend.* 326; 55 *N. Y.* 664; 2 *Spears,* 550; *Wood Nuis.* 887. Where the injury complained of is transient, and capable of being removed by the abatement of the nuisance, then the measure of damages must be the loss of rental value during the continuance of the nuisance.

Messrs. *Simonton & Barker* and *S. Lord, Jr.,* contra.

April 7, 1882. The opinion of the court was delivered by

Mr. JUSTICE McGOWAN. This was an action against the Champion Cotton Press Company for injury to the value of a house and lot belonging to the plaintiff, alleged to arise from the operation of the machinery of the company and the manner in which they conducted their business. The plaintiff owned a house and lot on the east side of Cumberland street in the city of Charleston, which was leased to one Guillemin. About 1875 the defendant corporation erected in the neighborhood of the said house and lot a steam cotton-press and warehouse, and has since carried on the business of pressing cotton by ma-

chinery driven by steam, called a "steam cotton-press." The plaintiff alleged that the defendant corporation in prosecuting their business blocked Cumberland street with cotton bales, and " still continues so to do, and impedes and sometimes completely obstructs the passage of vehicles and persons in the street, and by which means the said dwelling-house and store of the plaintiff was and is subjected to increased risk of fire and thereby rendered insecure, unsafe, uncomfortable, and of less value, and by reason thereof the said Guillemin had abandoned the said house as a tenant. That plaintiff has not been able to lease the same. That said defendant had rendered the said buildings unfit for business as a store or habitation as a dwelling-house, to the nuisance of the plaintiff and to his great damage ten thousand dollars ;" and prays that the defendant corporation should be enjoined from continuing said nuisance and for damages already sustained ten thousand dollars, etc. The corporation denied all unlawful conduct on their part in the use of their own property, and all damage alleged to have been sustained by the plaintiff caused by the operation of their cotton-press.

The case was heard by Judge Kershaw. On the trial, evidence was introduced by the plaintiff tending to sustain the allegations of the complaint, and also the loss of rent by the plaintiff in consequence of the abandonment of the premises in question by his tenant, caused by the danger, annoyance, and inconvenience arising from the erection of the steam press, and by the conduct of business by the defendant and by the inability of the plaintiff to obtain other tenants at an adequate rent in consequence of the same ; which evidence on the other hand was met by the defendant with evidence tending to prove the contrary, and to show that the plaintiff had suffered no such loss in consequence of such abandonment of the premises by his tenant, nor by such danger, annoyance, and inconvenience, nor by his inability, in consequence thereof, to obtain other tenants.

Upon this evidence the case went to the jury. The judge was requested by plaintiff's counsel to charge certain propositions of law, and he charged as requested in every particular

except one hereafter referred to.    The jury found for the defendant.    The plaintiff moved for a new trial, and that being refused, he appeals to this court upon the single exception, " Because his Honor refused to charge the jury as the plaintiff requested, 'that the measure of the damages in this case should be the loss of rent sustained by the plaintiff by reason of the abandonment of his premises by his tenants, caused by the wrongful acts of defendants, and the difference between the value of his, the plaintiff's, property before and the depreciated value of the property since the commission of the acts complained of.' "

This request in the terms proposed the judge declined ; but he did charge as follows : " I have charged you adversely to that proposition.    I think the true measure of the damages is *the injury to the plaintiff's property.*    I do not think we can go into the matter of what rents have been received.    If you find for the plaintiff the extent of the damages to his property, you may add to that a computation of the interest from the time of such injury up to the present time.    The plaintiff is entitled to recover for the impaired value, if any, of his property and such interest as would be proper to compensate him, if he is entitled to recover at all."

The latter part of the request does not seem to be in entire unison with the first part.    If the judge charged that the difference between the value of the plaintiff's property before and *since* the commission of the acts complained of was the proper measure of damages, it could not be that the loss of rent *alone* could constitute that measure.    No objection, it seems, is made to the charge in regard to the latter part of the request, but the complaint is that he did not also charge the first part, claiming, as we understand it, that the measure of damages should be the loss of rent up to the time of trial, and after that the depreciation in the property.    In no view of the case could the judge have charged the first part of the request in the terms stated, for it took for granted that the rent was lost, and by the illegal acts of defendant, which were both questions of fact for the jury.    If, in directing attention to propositions of law, such charges are not carefully put upon a

statement of facts *hypothetical in character*, the facts involved in the proposition seem to be assumed as true.   *Thomp. Char. Jur.*, § 47.

The verdict was for the defendant, which indicates that in the judgment of the jury no injury had been done.   In the question submitted to the jury two propositions were involved: *first*, whether the press of the defendant corporation was a nuisance; if not, then there was an end to the matter.   But if it was, *then*, *second*, what injury, if any, had it inflicted upon the property of the plaintiff.   If, in considering these distinct propositions in their order, the jury never reached the subject of damages and it did not enter into their verdict, it would seem to be immaterial now whether there was error in the judge's charge as to the measure of damages.   " The rule governing the correction of errors at law requires that two things be made clear by the party alleging error: *first*, that some erroneous ruling has been made; and, *second*, that he has been prejudiced thereby as to the merits of his case."   *Trotter* v. *Robinson*, 6 *S. C.* 410.

As the question of damages was secondary, and could not arise until the question of injury had been determined in the affirmative, and the verdict was generally for the defendant, it is not clearly perceived how the plaintiff was prejudiced, even if the judge committed error in indicating the mode of ascertaining the damages in case there should be a recovery.   In the case of *O'Brien & Fryer* v. *Bound et al.*, 2 *Spears*, 501, it was held that " the jury having found the contract of the defendants to be joint, the charge of the presiding judge that the jury might find against one, even if a misdirection was immaterial, as it could not have influenced the verdict."   *Vide* 1 *Bailey*, 330 ; 8 *Rich.* 103 ; 3 *John.* 533; 10 *John.* 451.

The plaintiff makes no other complaint against the charge than as to the mode suggested for measuring the damages; but he insists that, this being a case in which damages were the essence of the action, the charge as to the mode in which they should be ascertained was in such terms as to confuse the jury and induce a verdict for the defendant, and therefore was error in law affecting the main point of the case.   It must be kept in

mind that the judge did not exclude but admitted the evidence as to rents. In charging the jury he said: " I think the true measure of damages is the injury to the plaintiff's property. I don't think we can go into the matter of what rents have been received. If you find for the plaintiff the extent of the damage to the property, you may add to that a computation of the interest from the time of such injury to the present time," etc. Was there any error in this? That must depend to a large extent upon the nature of the action and the issue joined.

This was not an action against the corporation for a breach of contract, but for a tort, in so using their property as to injure that of their neighbor. It is true statements are made in the complaint alleging a contract with a certain tenant to lease plaintiff's house and lot, which he abandoned, but the defendant corporation was not privy to that. The extent of their liability was the injury to the plaintiff's property resulting from their unlawful acts. The mode of estimating damages in cases of tort is different from that in cases of contract. In the latter the consequences can be ascertained generally by estimating the benefit the party would have received from the performance of the contract, but not so as to the former class.

As Mr. Wood expresses it : " In the case of a contract, the measure of damages is much more strictly confined than in cases of tort. As a general rule, the primary and immediate result of the breach of contract can alone be looked to. The principle seems to be, that in matter of contract the damages to which the party is liable for its breach *ought to be in proportion to the benefit he is to receive from its performance.* . . . Actions for *tort* are governed by a far looser principle. Torts are divided into two classes—injuries to the property and to the person or character. The difference is, that in cases of contract and in some cases of tort to property a rule can be applied to the facts so accurately as to make the amount a mere matter of calculation. In the other class of offences the rule goes no further than to point out what evidence may be admitted and what grounds of complaint may be allowed for. But when this is done the amount of damages is entirely in the disposition of the jury." *Woods Mayne on Damages,* Sect.

11, 47. The following cases cited and relied on by plaintiff were cases for breach of contract: *Dewint* v. *Wiltsie*, 9 *Wend.* 326; *Ruff* v. *Rinaldo*, 55 *N. Y.* 664; *Tappans & Noble* v. *Harwood*, 2 *Spears*, 550.

The judge charged "that the measure of damages was injury to the plaintiff's property. The plaintiff is entitled to recover for the impaired value, if any, of his property, and such interest as would be proper to compensate him." Did that not fairly cover the whole ground both before and after the trial, "from the time of such injury up to the present time"? Taking the whole charge together, we do not see that he took from the jury entirely the consideration of the rents, which was only one kind of evidence of injury. "Injury to the plaintiff's property" was more comprehensive, and covered all the elements that entered into the *quantum* of the jury. The general included all the particulars.

The jury, being told that it was for them to estimate that injury *with the right to add interest as damages*, were thereby authorized to consider "injury" of all kinds, not only in annual rental, but deterioration from any cause. Whilst the alleged loss of rents under the charge might be considered along with other evidence upon the subject of general injury, the judge informed the jury that they could not go into the matters of rent as the exclusive basis of their verdict. Proof of loss of rent was admitted, but as the only evidence of injury to the property it was not only inadequate but unreliable. The loss of rent might arise from various causes other than the proximity of the cotton-press. In particular localities in cities it sometimes happens that rents rise or fall from causes which are difficult to understand.

The complaint did state matters of agreement between the plaintiff and his tenant in regard to the house and lot in question, but with that, as before stated, the defendant corporation had nothing to do. It may be true also that the plaintiff limited his testimony to the matter of rents and the alleged cause of their falling off, but the issue made by the pleadings was broader than that: " The said defendant has rendered the said buildings unfit for business as a store or habitation as a

dwelling-house, to the *nuisance* of the plaintiff and to his great damage *ten thousand dollars,* wherefore the said plaintiff demands damages in the sum of ten thousand dollars already sustained by the plaintiff in the premises." The plaintiff's objection amounts substantially to this, that in the matter of measuring the damages the jury were allowed too wide a latitude, although that latitude was not inconsistent with the nature of the case or the issue made in the record.

The judgment of this court is that the judgment of the Circuit Court be affirmed.